## BENNETT *et al. v.* BROWN.

A justice of the peace requiring a bond upon issuing an attachment against a non-resident debtor under *ch.* 300 of 1831, § 33, the defendant executed the bond, and left it with the justice under an agreement that it was not to be used as the basis of the proposed attachment in case the defendant should produce to the justice a decision that a bond was unnecessary in such a case. The attachment was thereon issued, and the defendant afterwards producing a decision that the bond was unnecessary, it was surrendered and destroyed: *Held*, that the defendant was liable on the bond for the damages sustained by the party against whom the attachment issued.

Such damages include the costs upon a *certiorari* on which the judgment recovered in the attachment suit was reversed.

The condition of the bond, that the plaintiff in the attachment should obtain judgment, was not satisfied by obtaining a judgment before the justice, which was afterwards reversed.

APPEAL from the Supreme Court. Action upon a bond executed by the defendant upon the issuing of an attachment by a justice of the peace against the plaintiffs as non-resident debtors under the provisions of the act to abolish imprisonment for debt. (§ 33, *Laws of* 1831, *p.* 403.) The defendant pleaded, first, *non est factum.* The second plea raised the question whether or not a bond was authorized and required by the statute on issuing such an attachment. To this the plaintiff demurred, and the demurrer was sustained. (4 *Comst.*, 254.) After this decision there was a trial before a referee, who found these facts: On the 9th of August, 1843, one Smeads applied to a justice of the peace of St. Lawrence county for an attachment against the plaintiffs, upon affidavit of their indebtedness and non-residence. The justice required a bond before issuing the attachment. The defendant was called on, in behalf of Smeads, to execute it. He informed the justice that the Supreme Court had decided that a bond was unnecessary in such a case. The justice doubted the fact of such a decision, and required the bond. The bond in question was then signed

by the defendant, and left by him with the justice, with the condition and agreement that the justice might use it as the basis of an attachment in case the defendant failed to produce a decision of the Supreme Court that such bond was unnecessary; and it was understood and agreed between the defendant and the justice, that the bond was not to be used for the purpose of founding an attachment upon it unless the defendant failed to produce such decision. The justice issued the attachment within twenty-four hours after receiving the bond. In fulfillment of his agreement the defendant did produce to the justice such a decision of the Supreme Court (*Bates* v. *Relyea,* 23 *Wend.,* 336), as he had mentioned, and thereupon the justice delivered up the bond to the defendant, by whom it was destroyed.

Property of the plaintiffs was seized by virtue of the attachment, and Smeads having obtained judgment in the suit thereby commenced, the property was sold under execution. The plaintiffs sued out a *certiorari* from the St. Lawrence Common Pleas, upon which the judgment recovered against them by Smeads was reversed, with $20 costs, on the 5th October, 1844.

The referee directed judgment against the defendant for his damages sustained by the issuing of the attachment, including therein the costs on the *certiorari* in the Common Pleas. The defendant took exceptions and appealed, and the judgment having been affirmed at general term in the fifth district, appealed to this court.

*Francis Kernan,* for the appellant.

*J. A. Hathaway,* for the respondents.

SELDEN, J. The appellant is undoubtedly right in the position, that although a deed is duly signed and sealed by the party to be bound by it, yet if, instead of being delivered absolutely, it is left in the hands of a third party to take effect upon some contingency thereafter to occur, it does not become obligatory, and is not the deed of the party signing it until

Bennett *v.* Brown.

the contingency happens. The question here is, whether this is such a case.

In determining the effect of the agreement upon which the bond in this case was left with the justice, we are not to look solely at the mere words of the parties, but are to consider the nature of the transaction, and the circumstances of the case. The object of executing the bond was to comply with the statute provided a bond was required. Both parties knew that in case a bond was necessary, it must be executed before the attachment could be legally issued. It was clearly in reference to this necessity that the bond was given before settling the question as to the requirements of the statute. It must have been the intention of the parties, that the bond should take effect, so as to support the attachment, in case upon further investigation it should turn out that such a bond was necessary.

This intention is clearly indicated by the consent of the defendant to sign the bond and deliver it to the justice in advance, and by the action of the justice in issuing the attachment without waiting to settle the construction of the statute. Hence, although the words used by the parties, if construed by themselves, might seem to create a condition precedent; yet when considered in the light of the attending circumstances and the action of the parties, it is clear that a condition subsequent was intended. Any other construction would impute to the justice gross misconduct, in issuing the attachment before he knew whether he had any bond or not.

This construction is confirmed too by the fact, that no time was fixed for producing the decision of the Supreme Court. If the failure to produce such a decision was intended to be—as the defendant contends—a condition precedent, and no time was set when the defendant should be deemed to have failed, then the justice might have been obliged to go through the whole proceedings upon the attachment, without having any bond, or knowing whether he had or not. The justice should not be charged with entering into such an arrangement in a matter of public duty, unless his acts will admit of no other interpretation.

The next question is, whether the condition of the bond was satisfied by the recovery of a judgment before the justice, notwithstanding that judgment was reversed upon *certiorari*. The condition was, that if the obligors should pay to Morris and Jesse Bennett (the defendants in the attachment), all damages and costs which they should sustain by reason of the issuing of the attachment, if Smeads (the plaintiff in the attachment) should fail to recover judgment thereon, then the bond to be void.

The defendant contends that when the plaintiff in the attachment recovered a judgment before the justice, the bond was at an end, whether that judgment was legal or illegal, or whether it remained in force, or was abrogated or reversed. This I apprehend is putting far too literal a construction upon the words of the bond. It is true the defendant is a surety, and is therefore entitled to the favorable consideration of the court, but this cannot entitle him to a construction which in this case would defeat the whole object of the bond. That was intended to afford an indemnity to the plaintiffs against the consequence of the attachment, if wrongfully obtained. By the defendant's construction, if the wrong in obtaining the attachment is followed up by a wrong decision of the justice, then the party injured has no remedy upon his bond, although he is put to the additional expense of a *certiorari* to get rid of the judgment.

I do not believe this is the true meaning of the condition. The statute could never have intended to make the indemnity of the party, proceeded against in his absence, dependent upon the accuracy of the justice. This question was decided in accordance with these views, by the Supreme Court in the case of *Ball* v. *Gardiner* (21 *Wend.*, 270), and I see no reason to doubt the correctness of that decision.

A further question arises as to the liability of the defendant for the costs of the *certiorari*, as a part of the damages to be recovered. This question admits, I think, of less doubt than that just considered. The undertaking of the defendant was, to pay all damages and costs, which the plaintiff should sustain "by

reason of the issuing of the attachment." The costs of the *certiorari* were not only within the fair import of the condition, but strictly within the terms used. These costs were clearly caused by the issuing of the attachment. There is nothing in the language of the condition limiting the damages to such as should arise in the suit commenced by the attachment.

The judgment should be affirmed.

COMSTOCK, J., expressed no opinion.

Judgment affirmed.