LYMAN WOLCOTT and Wife *v.* FRIEND HOLCOMB and CHARLES P. HOLCOMB.

By an assignment of an interest in a demand, as collateral to a debt, the assignor continuing the prosecution of the suit and remaining liable for the debt until paid, the assignee is not thereby rendered liable for the costs.

Where the attorney of an insolvent plaintiff takes from him an assignment of the judgment as security for the amount of costs he has included in such judgment, and the plaintiff continues the further prosecution of such suit on appeal, the assignee is not liable for the costs in such action.

In an application to charge an assignee, not a party to the suit, with costs, the moving party holds the affirmative, and is bound to make out a satisfactory case.

APPEAL from an order of the General Term of the Supreme Court, reversing an order of the Special Term, requiring Danforth K. Olney, one of the plaintiffs' attorneys, to pay $278.88, the costs for which judgment had been given in favor of the defendants upon the final decision of the action in this court, with interest, on the ground that the plaintiffs had made an assignment of the demand to him and his partner, John Olney, *pendente lite.*

The affidavits on which the motion was made and opposed showed that the action was originally commenced in the County Court of Greene county, for an assault and battery alleged to have been committed by the defendants on the wife of the plaintiff, L. Wolcott. The plaintiffs recovered judgment in that court in February, 1848, which judgment was affirmed at the General Term in December following, for damages and costs, $168.87, and was also affirmed on appeal to the Supreme Court, with additional costs, in September, 1859. On appeal to this court, the foregoing judgments were reversed and judgment rendered in favor of the defendants, with costs, amounting to the sum first mentioned, in October, 1852.

The motion to charge the attorneys with the costs was made in August, 1859, more than six years after the judgment of this court and ten years after the alleged assignment.

The assignment which was relied on to subject the attorneys to the payment of the costs, was alleged in the moving papers to have been made during the pendency of the appeal to the Supreme Court, but the opposing affidavits state that the transaction was after the judgment of the county court and before the appeal.

The special facts contained in the affidavits are sufficiently stated in the opinion.

*J. H. Reynolds,* for the appellants.

*D. .K. Olney* in person.

Denio, Ch. J.   The provision of the Code of Procedure in respect to the liability for costs of persons not parties to the record, is broader than the former practice of the courts, or the corresponding provision of the Revised Statutes. (Code, § 321; 2 R. S., 515, § 47, 2d ed.)   It embraces in its language the case of one defending an action in the name of the defendant on the record, and of a respondent on appeal; whereas the former law was limited to one prosecuting in the name of a plaintiff under such circumstances. (*Miller* v. *Adsit,* 18 Wend., 672; *Bendernagle* v. *Cocks,* 19 id., 151; *Ryers* v. *Hodges,* 1 Hill, 646.)   The Code, however, requires that the cause of action should have become the property of the person sought to be charged, by means of an assignment or otherwise.

The question in this case, therefore, is, whether the cause of action had devolved upon the Messrs. Olney during the progress of the litigation.   That was effected by assignment if at all.   Lyman Wolcott, one of the plaintiffs, swears, that after the recovery in the county court, he and his wife, the co-plaintiff, assigned the verdict and judgment and all their interest in them, by writing, to the Messrs. Olney, or to D. K. Olney, one of that firm, for a valuable consideration, and that since then they have had the whole management of the cause.

The judgment was for about $170, and about one-half of this was the plaintiffs' costs which equitably belonged to the

Olneys, who were the plaintiffs' attorneys. These attorneys had no prior claim on the damages recovered, and Wolcott was not indebted to them on any other account. It is noticeable that Wolcott does not, in his affidavit, mention any actual consideration for their transfers, or refer to any dealing as furnishing a consideration or occasion for the transaction. The statement that it was for a valuable consideration is no doubt *prima facie* sufficient, if uncontradicted; but in determining upon the relative weight of the respective allegations, we cannot fail to see that it was in the power of the party disposing of the judgment, if it was sold to the Olneys, to give some account of the equivalent which he received for the interest which he parted with, or some circumstance connected with the sale. If there was no real transfer of the portion of the judgment represented by the damages, the alleged assignees can only deny the allegation in general terms. Both the Messrs. Olney deny any purchase of the judgment, or the payment of any consideration for such a purchase. Mr. D. K. Olney states, that according to his best recollection and belief, he applied to the plaintiff, after the recovery in the county court, for security for his costs, which did not exceed the amount of taxed costs included in the judgment, and that the plaintiff Wolcott thereupon gave him *a claim upon the judgment* as security for the costs and disbursements; that he cannot say whether this was in writing or verbal, but that according to his best recollection and belief, it is the only assignment which was ever made to him or to his firm. The suggestion that the equitable lien of the attorney, for the costs embraced in a judgment obtained for a client, was not well settled at that time, and hence that an actual assignment would be necessary to protect them, is not without weight. But even if that right or lien was unquestionable, it would not be an unnatural or improbable circumstance for the attorney of an insolvent client to desire him to manifest by an actual transfer, the attorney's ownership of so much of the judgment as was for the costs.

It is to be observed that the allegations in the opposing affidavits are mainly upon recollection and belief, and that scarcely

anything is stated positively. If the transaction were a recent one, it would be expected that those affidavits would contain a more positive denial; but after the lapse of ten years, no careful person of ordinary memory, whose business was somewhat extensive, could speak positively of a transaction of small pecuniary moment which had not been recalled to his mind in the *interim*. It is in this part of the case that the absence of attending circumstances, in the moving affidavit, is specially prejudicial to Mr. Olney. Any mention of the particular incidents of the transaction would, if he is right, have enabled him to speak with certainty. He does, however, swear, that according to his recollection and belief, no money or other consideration was paid to Wolcott on the occasion of his giving his attorneys a claim on the judgment for the amount of their costs; and he further states that he has examined the cash books and account books of the firm, and those kept by himself individually, and can find no entries respecting it.

The affidavit of D. K. Olney is corroborated by that of John Olney, his partner, but in the same guarded manner; and he adds a statement of the actual keeping of cash and account books, embracing entries of all moneys received and paid out by the firm. He further states that the firm dissolved their business connection after the time of the alleged assignment and before the conclusion of the litigation, and that according to his recollection, no account was made of anything connected with the transaction except the attorney's costs in the suit. The attorneys unite in swearing that they did not take the litigation into their own hands, as charged in the moving papers, otherwise than conducting the suit in the ordinary way, as attorneys, but managed it on behalf of Wolcott, as they had done before the alleged assignment.

It is charged in the affidavit of the defendant, Friend Holcomb, that John Olney gave notice to him, soon after the recovery in the county court, that the judgment had been assigned to him and his partner, and forbade the defendant from paying it to the plaintiff; and one Ebenezer Belknap

is stated to have been present and to have been appealed to
as a witness of that giving of the notice.   This is denied by
John Olney upon recollection and belief; and Belknap
swears that he has no recollection of such a conversation,
though he cannot deny it more positively.   One H. T. Hol-
comb, a relative of the defendant, makes affidavit that he
had a demand against Wolcott, and, having heard that he had
recovered a judgment against the defendants which had been
assigned to the Olneys, he had a conversation with D. K.
Olney, who admitted their having purchased the judgment,
and said, in effect, that he would endeavor so to manage the
matter that the witness could be paid his demand out of
the recovery.   This is nearly as consistent with the idea
that the interest of the Olneys was confined to their lien
for costs, and that an assignment had been made to pro-
tect that lien, as with the other view.   If the attorneys had
become sole owners of the judgment in their own right, they
could not, except as a mere gratuity, have paid any portion
of it to the witness.   But the conversation itself is denied
by Mr. Olney, according to his recollection.

In an application of this nature, the moving party holds
the affirmative, and is bound to make out a satisfactory case.
Upon these papers I cannot say that I feel convinced that
the judgment was purchased by, and assigned to, the attor-
neys, or either of them.   If their affidavits are ingenuous and
truthful it could not have been so.   A direct and positive
denial by them would, of course, be fatal to the application.
The only doubt I have has arisen upon the extremely cau-
tious and guarded manner in which the allegations of the
moving party are met.   But this I think can be fairly
accounted for by the lapse of time.   The statute of limita-
tions has not a direct bearing upon the case; but if a party
will postpone a claim for so great a length of time his laches
ought to be weighed against him in considering the evi-
dence.

It appears that shortly after the reversal of the judgment
in this court, a fresh action was commenced for the same
cause, the proceedings in which were soon stayed by an

order of the court, on the motion of the defendants, on account of the non-payment of the defendants' costs in the first suit. This was more proximate by six years to the alleged assignment, and the defendants had, at that time, the same notice of it which they had when this motion was made. It would seem that a direct application for the payment of these costs would then have been made if it was supposed that the attorneys had become liable for their payment.

Assuming the transaction to have been such as D. K. Olney states it to be, namely, an assignment made for the purpose of securing the attorneys for their costs, and as collateral security for their payment, there was no foundation for the order of the Special Term. The attorneys having, as is now well understood, a lien for the costs, their position was not changed by having that right established by actual convention. But if this were otherwise, the assignment of an interest in a demand, as collateral to a debt, the assignor continuing the prosecution of the suit and remaining liable for the debt until it is paid, does not render the assignee liable for the costs. (*Miller* v. *Randall*, 20 Wend., 630.)

I am in favor of affirming the order of the General Term which is appealed from.

MULLIN, J. Lyman Wolcott, one of the plaintiffs in this action in the county court of Greene county against the Messrs. Holcomb, swears positively that the plaintiffs, for a valuable consideration, sold and assigned the verdict and judgment in said action, and all their interest therein, to the Messrs. Olney; that such transfer was in writing, and duly executed by said plaintiffs, and since that time they have had no interest in said judgment or verdict. That the Messrs. Olney, since the assignment, have been the owners of said verdict and all matters connected therewith, together with the appeal thereon, and they have had the whole management thereof and interest therein, and that said plaintiffs have had nothing to do with the same since the said transfer, or any interest in the same or the subject matter thereof.

In corroboration of this evidence, Friend Holcomb, one of the defendants in said judgment, testifies that, after the recovery of said judgment, John Olney, one of the firm of D. K. & J. Olney, called on him in presence of one Belknap, and notified him that said judgment had been assigned to his firm, and forbade the defendants to pay the same to the plaintiffs, but must pay it to them (the Messrs. Olney), as they were the owners of it.

Homer T. Holcomb testifies, that he held a note against Wolcott, and learning that he (Wolcott) and wife had recovered judgment against Holcomb, called on D. K. Olney, who informed him that the Messrs. Olney had purchased the judgment, but he would try to work in said note some way, or get pay on it.

On this evidence standing uncontradicted, there could be no doubt but the Messrs. Olney would be liable for the costs. They are made purchasers of the judgment for a valuable consideration; they assert their title as such, and prosecute the proceedings subsequent thereto for their own benefit and not that of Wolcott and wife. I have laid out of view all that is stated in the moving papers, on information and belief, as not entitled to any weight in deciding the questions of fact presented by the papers.

Let us now examine the affidavits used in opposition to the motion, and see whether the case made against the Messrs. Olney is answered by the opposing affidavits.

D. K. Olney swears that, according to deponent's best impression and recollection, and as he verily believes to be true, that during the winter of 1848–9, he saw Wolcott and requested some arrangement to be made to secure the payment of the costs and disbursements of his firm in said action; that, according to his best recollection and belief, Wolcott, before the appeal to the Supreme Court, either verbally or in writing, gave a claim on said judgment as security for said costs and disbursements; that the attorneys' costs and disbursements did not exceed the costs and disbursements in the record; and that the judgment, subject to such claim, belonged to Wolcott and wife. Olney does not recollect

whether the agreement transferred the judgment conditionally or absolutely, or whether made to him alone or to his firm; but whatever its terms were, the claim was understood and intended by the deponent and Wolcott to be conveyed only as security for said costs and disbursements, and the only object he had in taking it was to secure such costs and disbursements; that, according to his recollection and belief, no money or other consideration was paid to Wolcott on said agreement being made; that he finds no entry of anything being paid on the books of his firm or his own books, nor can he find any other indebtedness of Wolcott to him or his firm; according to his best recollection and belief, the judgment was not taken at the risk of said Olney or his firm; nor did he or they become absolute owners thereof in their own right or for their benefit, but, on the contrary, Wolcott continued to have the same interest in such judgment after as before the transfer, and continued to exercise the same care and control over it after as before it was assigned.

John Olney testifies, that he never knew of any assignment of the judgment to his firm or to either member thereof; that Wolcott continued to have the care and management of said suit during the continuance of said partnership, and that the only control his firm had over the proceedings was as attorneys and not otherwise. The settlement between D. K. & J. Olney, at the time of the dissolution, did not embrace anything connected with said judgment, except the costs.

D. K. & J. Olney deny, on recollection and belief, certain conversations alleged by the affiants in the moving papers to have been had with them; but, as I give no weight to the conversations in arriving at my conclusions on the facts, I have omitted all reference to them. And I do not overlook what is said by D. K. Olney in reference to a subsequent action. I do not give it the weight it would be entitled if the moving party had had an opportunity to answer those statements.

It is conclusively established that an assignment was made, by Wolcott and wife to the Messrs. Olney, of the judgment

against Holcomb. The evidence, on the part of the moving party, is positive that such assignment was absolute — a sale of the judgment, verdict and cause of action.

To overcome this, we have not the positive denial of either of the Messrs. Olney, but a denial founded on their best impressions, and recollection and belief. These statements would be true if the whole transaction had passed utterly from the memory or had never occurred. The parties are not censurable because they do not recollect an occurrence so long passed. But that does not give to their impressions the weight which belongs only to the oath of a person who recollects and can testify, positively, to a transaction of which he was personally cognizant. · The evidence of Wolcott is not balanced, much less overcome. The evidence of John Olney adds but little strength to the case made by his brother. He has no knowledge on the subject, and the facts to which he speaks are rather of a negative than affirmative character.

Wolcott is supported, in some essential particulars, by the affiants in the moving papers. Making any reasonable allowance for the contradiction of these persons by the Messrs. Olney, still the weight of evidence is against them.

When an assignment was shown, without any evidence that it was conditional or qualified, the inference would be that it was absolute. But if it was in fact taken as collateral, the assignee should be held liable. He is, in that case, beneficially interested in the prosecution of the action, and should be liable for its costs. The statute (3 R. S., 5th ed., 809, § 11) embraces him and establishes his liability.

In *Whitney* v. *Cooper* (1 Hill, 629), it was expressly decided that one who holds the demand, merely as collateral, is beneficially interested within the statute. This case is recognized in *Giles* v. *Halbert* (2 Kern., 33), that it was taken by purchase and not as collateral security.

It was incumbent on the Messrs. Olney to prove that it was taken as collateral. This they have failed to do, against the positive oath of the assignee that it was absolute, and that thereafter they, and not he, owned the judgment.

The respondents' counsel criticises the affidavit of Mr. Wolcott in some particulars, which renders a brief notice of those points necessary.

It is said that he does not specify the time when the assignment was made.

The precise time was of no moment. The great questions were, whether there was an assignment, and whether, if there was, it was absolute or conditional merely. The impossibility of stating the exact time was felt by Mr. D. K. Olney when he made his affidavit, for he counts no nearer the time than the winter months of 1848–9. Again, Wolcott had signed a paper which he had the right to suppose would be ready at all times to speak truly as well in regard to the date as the terms of the transfer.

It is said in the next place that Wolcott does not state the consideration. It was not necessary. If the paper had been produced it might have stated the consideration by the words for value received by Wolcott, which would have been as indefinite as those used by Wolcott. Could he have known that the true consideration would be material, and had then refused or neglected to disclose it, an inference might be drawn against him. But the important point was, whether the transfer was supported by a consideration, and not of what that consideration consisted.

Some stress is laid in the opposing affidavits on the fact that Wolcott, after the assignment, continued to manage and control the cause as before. This the Messrs. Olney swear to, and this Wolcott denies. After the appeal it is somewhat difficult to understand, in the absence of any specification, what Wolcott could do in regard to the case, which could be called either managing or controlling it. The case of the appeal belonged to the attorneys, and it is not alleged that either Wolcott or his wife has paid either costs or disbursements to any one, so far as the papers go. It is not alleged that he (Wolcott) has ever been called on to pay the costs of the Messrs. Olney, although some seven years have elapsed since the case was terminated.

The bringing of a second action after the reversal of the judgment in this court by the directions of Wolcott and wife,

would be more strongly corroborative of the position taken by the Messrs. Olney, that they did not take the assignment absolutely, were it not that Wolcott has had no opportunity to answer such statement, further than he has done in the moving papers, by denying all interference with the case, and that the transfer was absolute or not conditional.

Another reason for resisting the payment of costs by the attorneys as assignees of the judgment is, that the appeal was a new action, in which they were defendants, and therefore not liable to pay costs.

It was very properly held that when an action is prosecuted in the name of another, the party in interest must pay the costs to the opposite party if the latter succeeds in the action. But he is not liable for the costs of the proceeding by writ of error to review the proceedings in which the party in interest was successful. (*Miller* v. *Adsit*, 18 Wend., 672.) The proceeding in error is considered a new action, prosecuted by the losing party in the court below for his own benefit.

It was said in the case cited that there is no case in which a person defending an action in the name of another has been held liable to the plaintiff for costs, with the exception of a landlord defending an action of ejectment in the name of his tenant.

An appeal, it is said, differs from a writ of error in this, the latter is a new suit, while the former is a continuation of the same suit. And one consequence of the difference is that, in the appeal, the party in interest is liable for the costs if the case is finally decided against him.

The cases on this question are so conflicting, in the Supreme Court, that they do not aid us in deciding it; and the only case that I can find in this court bearing upon it is that of *Robinson* v. *Plimpton* (25 N. Y., 484). In that case an appeal had been taken by one of the stockholders of a bank, of which the plaintiff was receiver, to the General Term, from an order at Special Term, confirming the report of a referee, apportioning the debts of the bank amongst the stockholders. The appellant gave the undertaking required

by the statute; and the order of the Special Term was reversed by the General Term, and this court reversed the judgment of the General Term and affirmed that of the Special Term. In an action on the undertaking claiming to recover the costs of both appeals, the defendants demurred, on the ground that the judgment of the Special Term having been reversed by the General Term, the condition of the undertaking was satisfied, and they were not affected by the affirmance of the judgment of the Special Term in this court. The Superior Court of Buffalo overruled the demurrer, and the defendants appealed to this court, and the judgment of the Superior Court was here affirmed, on the ground that the undertaking is not discharged until reversal of the judgment in the highest tribunal to which the parties are by law entitled to and do remove the cause.

This decision is not put on the ground that the appeal is a continuance of the same action, but upon the ground that the condition of the undertaking was to pay all costs and damages which may be awarded against the appellant, not by the General Term or other inferior court of appellate jurisdiction merely, but by the court which should finally hear and decide the case. Allen, J., refers in his opinion to *Trover* v. *Nichols* (7 Wend., 434), *Bennett* v. *Brown* (20 N. Y., 99), *Boll* v. *Gardner* (21 Wend., 270), and *Smith* v. *Crouse* (24 Barb., 433). The first case was an appeal from a justice's court to the common pleas, and the last case was an appeal, under the Code, from a justice to the county court. The other two cases were carried to the common pleas from justices' courts, by *certiorari*. No stress is laid upon the difference in the manner in which the cases were removed. Nor was the fact that cases after removal were continuations of the same or were new actions, ever suggested as a ground for the ruling in this court; but the cases turned wholly on the terms of the undertaking.

If, however, the case after appeal is not to be considered a new suit when the rights of sureties are involved, I am unable to perceive why it should be so held in the case of a party for whose benefit it was originally prosecuted. The

party in interest is entitled to the benefits of the litigation, and he should be charged with the burthens attendant upon it. If the costs should be collected of the party to the record, he is entitled to recover the sum paid from the one to whose benefit the action was prosecuted or defended. And there is no necessity for resorting to this circuitous mode of reaching the result, when the court has ample power on motion to grant the relief.

I am, therefore, of opinion that the Olneys were liable for the whole costs of the action.

Another ground on which the relief sought by the motion is resisted is that the claim is bound by the statute of limitations.

It is not claimed that the statute in terms reaches the case; but the claim is, that when the case is one in which, if an action was brought, the statute could be successfully pleaded. The court should refuse relief on motion, upon the principle that when the party has slept over six years on his rights, the demand should be treated, in all courts and in all forms of proceeding, as outlawed.

Where a plaintiff has a clear right of action, and also a right to obtain relief by motion for the same matter, and he permits the action to be barred and then proceeds by motion, the court, in the exercise of a sound discretion, should refuse relief. But in a case where there was no relief by action, or it was at best doubtful whether an action is maintainable, the court, if the claim is a just and fair one, should grant the relief.

While the statute of limitations is to be enforced in every case to which it applies, it does not, in my judgment, furnish a defense which the court should go one step out of its way to encourage or sustain.

While it is desirable to prevent and discourage litigation and to prevent fraud and perjury, it never should be done at the expense of honesty or fair dealing. A law is essentially vicious — no matter what may be the motive that prompts its enactment — that enables a man to cheat his neighbor out of a debt honestly due, or shields him from the consequences of a breach of duty or of obligation.

A debt is none the less honestly due because more than six years have elapsed since it become due, and the moral sense of a people is, in my judgment, debased, in which, under sanction of law, a legal debt or duty may be avoided.

It remains to be proved that either of the statutes above referred to, have accomplished the objects had in view by those who framed them. I apprehend there would have been less litigation if the statute of limitations had never been passed, and that neither fraud nor perjury have been lessened by declaring void contracts not made in writing, or because they did not conform to some other rule of law. I think it has been proved that men are just as likely to resort to fraud and perjury to escape an obligation as to enforce it. The constant effort of courts to evade these statutes in order to prevent the grossest injustice, and the numerous instances of judicial legislation by which exceptions have been made to the arbitrary provisions of the statute, demonstrate the injustice and folly of such legislation. Perhaps the world is not prepared for the repeal of such legislation; but I believe the day is not distant when it will be repealed and when men will be astonished that they ever sanctioned or approved such laws.

The defendants in the action are legally and equitably entitled to their costs of the person bound to pay them, and on the evidence, it seems to me quite clear that the Messrs. Olney are the persons bound to pay. I have not found, nor have we been referred to any case in which an action has been maintained against the party in interest for the costs of the action. The usual, and indeed the appropriate remedy, is by motion, and there is no reason why the party should be denied relief. On motion it is turned over to the expensive remedy by action, and that, too, with a complete bar to his action, ready to be successfully interposed. Such a proceeding would be a mere mockery. I cannot assent to the application of the statute of limitations to the claim in question.

While I cannot assent to the affirmance of the order on any of the grounds suggested, yet I cannot comprehend why the

judge at Special Term should have made the order against D. K. Olney only. The evidence establishes the liability of both or neither. And it was due to the moving party as well as to D. K. Olney, that John should have been charged with his share of the liability.

But as neither party has raised any question in regard to this omission of the Special Term, we must overlook it and reverse the order of the General Term and affirm that of the Special Term, with costs.

The order of the General Term was affirmed on the opinion of DENIO, Ch. J.