Bradford et al. *v.* Mooney et al.

[*Special Term, May,* 1872.]

JAMES BRADFORD ET AL. *v.* JOHN B. MOONEY ET AL.

An attachment was discharged by the general term of this court on error, and judgment was recovered of the sureties on the attachment bond for all the damages accruing up to the final discharge of the attachment, and the sureties paid it.

On demurrer to a petition filed by the sureties on the attachment bond, against the sureties on the bond in error, for contribution *pro rata:* *Held,* That the two sets of sureties were not co-sureties, nor was there any right of subrogation or contribution, but that there existed the relation of principal and surety between the two sets of sureties, and the plaintiffs being the principal and having paid the damages, there was no liability on the defendants.

*Collins & Herron,* for plaintiffs.

*Yaple & Healy, Standish & Brown,* and *Matthews & Ramsey,* for defendants.

HAGANS, J.   Lee & Leavitt, on the 21st of February, 1867, sued out an attachment in this court, against Thomas C. Butler, for about $47,000, and the plaintiffs became sureties in the undertaking, given by Lee & Leavitt to Butler, to procure the attachment.   This undertaking was in double the amount of the claim, and to the effect that Lee & Leavitt should pay to Butler all damages which he might sustain by reason of the attachment, if the order was wrongfully obtained.   2 S. & C. 1004.   On this attachment Butler's property was seized, and his business interrupted and stopped.   On the 21st of September, 1867, the order of attachment was discharged.   Lee & Leavitt, being desirous that the attachment should be continued, and the order discharging the same should be reviewed in error in the general term of this court, filed a petition in error therein.   Plaintiffs being unwilling to become sureties on a supersedeas bond, refused so to do, and the defendants, without any solicitation or request, on the part of the plaint-

iffs, on the 28th day of September, 1867, became sureties on the supersedeas bond, and the order of attachment was thereby continued, and the property remained in the custody of the sheriff. This bond was made to Butler in double the amount of the appraised value of the property attached, conditioned to pay all damages to Butler sustained by him in consequence of the petition in error, "in the event the order of attachment shall be discharged by the court in which said petition in error shall be filed, as having been wrongfully obtained." S. & S. 593. On the 9th of February, 1868, the General Term affirmed the judgment discharging the attachment. Lee & Leavitt, in the meantime, had become insolvent; and on the 24th of July, 1869, Butler brought suit on the undertaking given by the plaintiffs, in which he claimed to recover about $94,000 as damages, by reason of being kept out of the possession of his property, and the breaking up of his business up to the 7th day of February, 1868. This suit the plaintiffs defended, spending a great deal of time in attending to their defense, and paying in costs and attorneys' fees about $1,330; and Butler recovered judgment against them on the 5th of June, 1871, for damages during the whole period named, to wit, from February 21, 1867, to February 9, 1868, to the sum of $4,500, which the plaintiffs paid.

The petition in this case avers that the defendants are bound in equity to reimburse the plaintiffs in such sum as the defendants are liable for to said Butler, to wit, with amount of damages sustained by him by reason of the continuance of the order of attachment from the 28th of September, 1867, to the 9th of February, 1868; and that they amount to the *pro rata* damages awarded against the plaintiffs, according to the time the property was held under the attachment by reason of the supersedeas bond, as well as a like *pro rata* share of the costs and expenses incurred by the plaintiffs in defending the suit against them, which they allege is as 134 days to 353 days, or $2,213, and interest from June 5, 1871

To the petition setting out substantially the foregoing facts, the defendants file a general demurrer.

It will be seen at once that the plaintiffs demand contribution for such portion of the time only as they and the defendants were both bound, as a result of a general equity, on the ground, not of a contract, but of equality of burden and benefit, though they are bound by different instruments. The relief demanded ought to be granted in this case, if the several bonds executed by the parties respectively are for the same engagement, or cover the same liability. The obligations must be for the identical subject matter, and they must have a common interest and a common burden, and be joined in the common end and purpose of their several obligations as much as if they were joined in one instrument, with this difference only, that the penalties will determine the proportions in which they are to contribute. And if one surety pays the whole debt, there is the right of contribution, on the ground of implied assumpsit, even at common law.

The leading case of *Devey* v. *Earl of West Chelsea*, 2 B. & P. 270, is the settled law, and very clearly lays down the principles stated. And it has been followed in the courts of this country, as appears from the cases collected in 1 Law & Eq. Cases, 139; *Pott* v. *Nathans*, 31 Penn. St. 155.

Were these obligations for the same thing? The undertaking to obtain the attachment to which the plaintiffs were parties, was on double the amount of the claim, and that they should pay all the damages which Butler might sustain by reason of the attachment, if the order was wrongfully obtained. The plaintiffs thereby became bound for the damages for wrongfully depriving Butler of the enjoyment of his property, as well as the natural and proximate consequences of the levy of the attachment. *Petit et al.* v. *Mercer*, 8 B. Mon. 51; *Reedhor et al.* v. *Berger*, 8 B. Mon. 160; *Bennett* v. *Brown*, 20 N. Y. 99; *Ball* v. *McPhee*, 21 Wend. 270; *Bennett* v. *Brown*, 30 Barb. 158.

These damages were all contemplated by the parties, as

well as the course and risks of the litigation. They must be held also to have had in view a proceeding in error, and the consequent delay and prolongation of the proceeding; and hence the judgment against them very properly included the damages for which they were bound, up to the time of the final discharge of the order of attachment in the general term of this court, that accrued by reason of the order having been wrongfully obtained.

The undertaking in error was in double the appraised value of the property, conditioned to pay all damages by reason of the filing of the petition in error, in case the attachment should be discharged as having been wrongfully obtained.

The first bond secures the damages for wrongfully obtaining the attachment in double the amount of the claim. The second bond secures the damages by reason of filing the petition in error in double the appraised value of the property, if the attachment shall be discharged as having been wrongfully obtained.

Now, it seems to me to be questionable whether the obligations are for the same thing. Is the burden assumed one common to both sets of sureties, or the end and purpose the same as if all were joined on the same obligation? The penalty of the one bond is in double the claim; of the other, the appraised value of the property; and may be for widely different amounts. The damages in the one case are for wrongfully obtaining the order of attachment; in the other, the damages, by reason of filing the petition in error, if the attachment shall be discharged by the court on error, as having been wrongfully obtained. Now, the first bond, as already stated, includes such damages as are the natural and proximate consequences of the attachment, to the amount of double the claim. Destruction of the property attached by flood, fire, or other cause, can not be included, unless it appears it was caused by wrongfully obtaining the attachment. The second bond seems, perhaps, designed to secure the safety and return of the property in double its

appraised value, after the attachment is discharged by the court below. · Butler would then have been entitled to exercise his own care over it; but, by the second bond, the sheriff continues to hold it, and if any damages be done to it in consequence of filing the petition in error, the defendants shall be liable if the order be discharged by the court in error as having been wrongfully obtained. The language of the statute (S. & S. 594) is, all damages sustained by the adverse party. But there seems a conclusive consideration why the obligations are not the same engagement, and for one and the same thing, and it appears on the face of the petition. The two bonds are independent. The parties do not stand in the same situation. The plaintiffs are liable from the time of obtaining their order of attachment; the defendants from the time of filing the petition in error only. The obligations are of different dates and for different amounts. This is admitted. This is not a case, therefore, of co-sureties, with the right of contribution. But it is said that from the time of filing the petition in error the obligation is identical, and that as to that period the obligation is identical, and that part of the damages were realized by reason of the delay caused by the petition in error. This statement seems to bring the case within the law relating to subrogation.

Is this a case, then, of the right of the plaintiffs to be subrogated *pro rata* to a security in the hands of the creditor, Butler, the payment of which the plaintiffs may enforce?

I derive no help from *Hartwell* v. *Smith*, 15 Ohio St. 56, 200, in this question, for there the obligations of the sureties were for the same debt, and the second surety signed the bond in error at the request of and along with the debtor and the first surety. The court held the debtor and the first surety to be in fact principal, and the second surety only liable in case they failed to pay the debt; and the first surety having paid the debt, there was no superior equity in his favor. The converse might be true, because it was

the same debt. Nor does *Denier* v. *Meyers*, 20 Ohio St. 336, apply, for there the bail, by virtue of the statute, assumed and agreed to pay the final judgment for the whole original execution, issued upon a judgment against principal and surety. It was not even the case of co-sureties, but of principal and surety under the statute. S. & S. 422. And so in *Potts* v. *Nathan*, 1 W. & S. 155, I do not think there was any intention in fact or law to make the defendants primarily liable for the damages stipulated for in their obligation. This seems to be the test in a claim for subrogation. In fact, the plaintiffs, by their bond, were the parties primarily liable for these damages, and they have paid them. *Bailey* v. *Brownfield*, 8 Harris, 41 ; *Stevens* v. *Goodenough*, 26 Vermont, 676. This can not be a case of the extension of the payment of a liability, without the consent of a surety, whereby the creditor has suspended his right of action; for, immediately on the rendition of the judgment in the court below, discharging the order of attachment, the liability of the plaintiffs became fixed, and Butler's right of action against the plaintiffs accrued, and he was not prevented from prosecuting the plaintiffs on the undertaking by the proceedings in error. To return to the plaintiffs' alleged right of subrogation. In *Wade* v. *Cooper*, 1 Sim. 155 (2 Cond. Eng. Ch. 358), the vice-chancellor said the doctrine of subrogation "never applied to a person who becomes a surety at one time, and a security is given to the same creditor, either for another debt, or what is the same thing, for a distinct portion of the debt for which the first security is given. I have not found any such case. On the contrary, the law has always been stinted to the particular contingency of the debt being one, and the security being given for the same debt at the time when the person became surety for it." But it is said that this right of subrogation in the case at bar grows out of the statutory relations of the parties. It seems to me, however, that the statute does not alter the law of the case, and that, viewing it in the most favorable light for plaintiffs, these parties

stand in the relation of principal and surety as to a portion of the damages, and that the obligation of the defendants was, at most, that, if the plaintiffs did not pay their portion of the damages after filing the petition in error, they would. The plaintiffs having paid them, that ends the matter, and the obligation of the defendants becomes extinguished. In this view, the bond of the defendants was a supplemental bond. They are not co-sureties, and there is no claim for subrogation or contribution. *Fields* v. *Pelot*, 1 McMul. Eq. 370; *Brandenburg* v. *Flynn's Adm'r*, 12 B. Mon. 397. On the whole case, the demurrer should be sustained.