Yah Yorst, J.
This action is brought to obtain a judgment declaring a will made by Notley Ann C. Holloday, bearing date August- 22, 1873, to be void, and cancelled as casting a cloud upon the title of the plaintiff to valuable lands situated in the county of Westchester. The principal facts, important to be considered, may be shortly stated as follows:
The defendant, Ben. Holloday, during coverture with Notley A. C. Holloday, the testatrix, now deceased, *18 was the owner in his own right in fee of the lands called “Ophir farm.” In the year 1871 he entered into an agreement with his wife, by which he undertook to convey to her, through the intervention of a third party, the fee to the land, upon her executing at the same time a last will and testament devising the land to him, in the event that he should survive her.
Ophir farm, in pursuance of the agreement, wás conveyed to Mrs. Holloday, by her husband, through the instrumentality of a third person, and upon her acquiring title she made and executed a will by which she gave all her estate to her husband. The deeds and will were severally prepared by the same counsel who acted for the parties. The transaction was so consummated'in March, 1871. The deeds and will are component parts of one transaction. Subsequently, and in the year 1873 and shortly before her death, Mrs. Holloday, being still the owner of Ophir farm, executed another will, by the terms of which she revoked her will of March, 1871, and made an entirely different disposition-of the estate. The defendants other than Ben. Holloday, take under the second will.
On December 22, 1883, the will of 1871 was admitted to probate by the surrogate of Westchester county, who at the same time rejected the second will upon the ground among others, that the testatrix was not of sound and disposing mind when she executed it, and that the same was void and of no effect, whereupon its probate was refused.
In 1873, and after the probate of the will of 1871, the defendant Holloday, the devisee thereunder of Ophir farm, mortgaged the same to the plaintiff as security for the payment of one hundred thousand dollars advanced by it to him, of which some forty-eight thousand dollars and upward was for the purpose of and was used in the extinguishment of liens, by way of mortgages and taxes, existing on the property at the time *19 of the conveyance to the testatrix. This mortgage was afterward foreclosed, and to the foreclosure suit, as well the defendant Ben Holloday, as the devisees under the will of 1873 were made parties defendants, and under the judgment recovered therein the plaintiff purchased Ophir farm. The plaintiff thereafter entered into possession of the lands, and still holds the same, but has been unable to dispose of it by reasons of adverse claims of title asserted by or on behalf of the devisees under the second will.
An important step is taken towards the decision of this case when the conclusion is reached—as it must clearly be—that the agreement between Ben Holloday and his wife, above referred to, was valid and should be upheld in this court, and that the rights and interests intended to be secured thereby should be adequately protected and secured to the extent that a court of equity has ability to act.
An agreement, founded upon a good consideration, to devise land will be enforced in a court of equity by the promisor and his heirs (Parsell v. Stryker, 41 N. Y. 480). In this case the agreement to devise was made upon a sufficient consideration. In order, however, to obtain such relief, the agreement to make such devise must not rest upon doubtful evidence, but must be clearly and satisfactorily proven by competent testimony (Shakespeare v. Markham, 10 Hun, 311—Talcott, J.; Walpole v. Orford, 3 Vesey, 402).
In the case under consideration the agreement between Holloday and his wife was clearly established.
The principle above announced was lately applied in a case in this court, in many respects quite similar to the one before me. I refer to Sherman v. Butts' in the Fourth Department. I cannot find that this case has as yet been fully reported, but a copy of the opinion of Rumsey, J., delivered at the special term, has *20 been submitted, and in Ms concMsions I entirely concur. The judgment of the special term has been affirmed at the general term.*
*21 The agreement in that case, as in this, was between a husband and his wife, and was by parol. The agreement was that the husband should convey certain real *22 property to Ms wife, and on her part it was agreed that she would devise the real estate to him in case he should survive her. It was held in that case that the *23 existence of the marital relation interposed no objection in equity to the validity of the agreement, and the rights intended to be secured to the husband by the *24 parol agreement were fully recognized and enforced in the action (Meeker v. Wright, 76 N. Y. 264).*
In the case before me, the agreement between Holloday and his wife was executed at the time, in so far as the writings and the acts of the parties could accomplish it. The land was conveyed by the husband to his wife, and she.in pursuance of the agreement, executed her last will and testament in his favor. She remained seized and possessed of the estate up to her death. Under such conditions the will, when executed, was clearly irrevocable.
If the agreement was valid in law and in equity, it would be a mockery of justice to say that having executed the will, she fully satisfied her part of the agreement, and was at liberty to revoke it the next day. *25 The right secured by her husband was substantial, and could not be defeated by another will. The spirit and true intent of the agreement, under which she became seized of and enjoyed the estate, obliged Mrs. Holloday to adhere thereafter to the terms of the devise in her husband’s favor. And as the agreement was to the extent above mentioned executed at the time, the inhibitions of the statute of frauds against the admissi bility of parol evidence as to contracts concerning the sale or disposition of land have no force. That subject is, however, fully considered in Sherman «. Butts, which must control the decision here.
If one of the contracting parties induces the other so to act, that if the contract be abandoned he cannot be restored to his former position, the contract must be considered as perfected in equity, and a refusal to complete is in the nature of a fraud (Willard’s Eq. Potter’s ed. pp. 284, 286). The husband having caused the property to be conveyed to his wife as he agreed, it would be impossible to restore him to his former position, otherwise than through the last will and testament of his wife, by which the title to the land should again become vested in him at her death. To defeat this conclusion, it cannot be insisted that a will is in its own nature ambulatory and revocable during the life of the testator. That statement, true in itself, can have no application to a case where the testator has obligated himself by a valid agreement founded upon a good consideration, which is wholly inconsistent with the making of another will, by which he should attempt to devise the property, the subject of the agreement, to others than the person from whom the consideration proceeded, and to whom he was bound by the terms of the agreement to devise it.
‘ ‘ Indeed, the doctrine of thé revocability of a will amounts merely to this, that a'will is ambulatory during the lifetime of- the testator, provided he has not *26 bound himself not to change it” (1 Jarman on Wills [5th Am. ed. by Bigelow], 18, note). The above quotation is a summary by the learned editor, from the cases which he has reviewed and to which he refers.
The absolute right to dispose of property, as the testator may elect at any time during life, may be abridged of modified by express contract, as other rights often are. And the obligation not to revoke or change a will, although negative, is as much involved in the agreement as the affirmative duty to devise in a certain way,
This is not an action for the specific performance of the agreement between the defendant Ben Holloday and his wife. Upon the principles above stated, such an action, had it been necessary, could have been maintained..
The will, in pursuance of the agreement, was made and published in 1871, and has been admitted to probate, and the rights of the devisees thereunder have been thus established. In admitting the first will to probate, the surrogate rejected the second one.
I do not regard it as important to examine in this action the questions of fact determined by the surrogate in respect to the second will, nor as to the mental capacity of Mrs. Holloday to understand or execute that will. His findings are at least primé, facie, correct and conclusive.
The surrogate rejected the second will for the reasons above stated, and which appear by the record in evidence. The real question upon which the controversy here turns, as I regard it, was not before him. It is, however, quite clear that the testatrix was in a feeble condition of physical and mental health at the time of the execution of her second will, and had been for some time previous, and her condition was such that it would occasion no surprise if she did not at that time have in mind nor remember her engagement *27 with, her husband, made some years previous, or then well consider their import, and in that light her action in making her second will, in which her obligations to her husband are ignored, may be excused.
The subsequent will, if the above views are correct, in so far, at least, as it devises Ophir farm to others than her husband is void in equity, and the devisees take nothing thereunder. They can make no valid claim under that will to any part of the property.
The plaintiffs, who have succeeded to the estate of Ben Holloday, the devisees under the will of 1871, find themselves embarrassed in the sale and disposition of the estate by the second will, which, notwithstanding its failure to be probated, is still outstanding, and as such confers supposed rights upon the devisees thereunder. It is in a condition to cast a cloud upon the plaintiffs’ title, as the rights of devisees under a will exist independent of its probate. In respect to real property, the devisee takes directly under the will and not through the executor.
The plaintiffs therefore, as I am persuaded, are entitled to a judgment by which their title may be effectually freed from the claims and right created, or intended to be, in favor of others by the second will. And as the invalidity of the second will could only be made to appear by extrinsic evidence, consisting largely of oral testimony, a case is well presented for the interposition of the aid of a court of equity to remove the second will as a cloud from the plaintiff’s title (Ward v. Dewey, 16 N. Y. 519 ; Bockes v. Lansing, 74 N. Y. 437; Code Civ. Pro. § 1866).
But the learned counsel for the defendant Pomtales objects that such defendant is an infant, and that an infant cannot properly be made a party defendant to an action to remove a cloud from the title to property, and urges that as to him the complaint must be dis *28 missed. Similar objections are taken by counsel for other infant defendants.
In support of this objection, I am referred to the case of Bailey v. Southwick (6 Lans. 356, affirmed in 56 N. Y. 407). In the opinion of the general term, it is stated that infants “ are incapable of making unjust claim of title.” But an examination of that case, in which the complaint was dismissed, shows that there was no cause of action in the plaintiff’s favor upon any view which could be taken of the action against any of the defendants, adults or infants. This is made perfectly clear by the opinion in the court of appeals.
Regarded as an action for the construction of a will, it could not be maintained, for the reason that the plaintiff therein stood in no such attitude 'to the subject of the controversy as to give a court of equity jurisdiction. Nor could that action be maintained under the statute for the determination of claims to real property, nor as a bill quia timet.
What is said in the opinion of the court of appeals, in regard to infant defendants, was in connection with proceedings under certain statutes for the determination of claims to real property to which infants could not be made parties. Had the present action been a proceeding of that nature, the objection would have been well taken. But as it is not, the objection falls.
It was a rule in the court of chancery, although not in courts of law, that no judgment for special relief should be made against an infant without giving him a day after he comes of age to show cause against it (Bushnell v. Harford, 4 Johns. Ch. 301; Wright v. Miller, 1 Sandf. Ch. 103).
Mr. Coudert, the counsel for the infant defendant, has cited several additional cases which clearly express this rule and practice. But even if that rule existed at present to the extent claimed, it would not lead to a *29 dismissal of this case, as the rights of the parties might yet be determined.
These infants, although appearing by their guardian ad litem, are all under the protection of this court, and their rights should receive the most careful consideration ; yet I know of no valid reason why infants may not be made parties defendants to an action in equity of the nature of the one now under consideration. The present adjudication of the questions here involved seems to be a necessity. The second will, under which the infants claim, casts a present cloud.
The adjudication which the plaintiff asks is not of future or contingent claims, but of rights and claims now existing. They may as well—in fact, better—in so far as the evidence is concerned, be disposed of now than be deferred to some distant future. The reason for the rule which formerly prevailed in a court of chancery, giving an infant a day to appear after he shall have reached his majority, no longer exists. The proper defense of the infant devolves upon his guardian ad litem, who, by accepting the trust, becomes obligated to its due performance (Phillip v. Dusenbury, 8 Hun, 348). And the able and' thorough preparation on the behalf of the infant defendants shows that this obligation has been fully met in this case.
An infant can now be made a defendant in an action for the foreclosure of a mortgage, for the specific performance of contracts, for the partition of lands, and for the construction of wills ; and they are concluded by the judgment in such cases as adults are.
In Schouler’s Domestic Relations (§ 453) it is said, in substance, that an infant defendant is as much bound by a decree in equity, rendered upon d ue jurisdiction and fairly, as a person of full age, and. that if there be an absolute decree made against a person who is under age, and who has regularly appeared by a guardian ad litem, “he will not be permitted to dis *30 pute it, unless upon the same ground as an adult might have disputed it—such as fraud, collusion, or fundamental error.”
The Code itself makes provision for the rights of infants with regard to applications to set aside judgments (Code Civ. Pro. §§ 1282,1291; Bickel v. Erskine, 43 Iowa, 213, 222).
Before disposing of this case I shall allude to two objections which are specifically urged upon the attention of the court, one of which has, however, in effect been considered and disposed of. The defendant’s counsel contends that parol evidence of the original agreement between Holloday and his wife was inadmissible.
After what has been said above with regard to the performance of the agreement of 1871 by the deed and possession thereunder, and the will, it is not considered important further to elaborate that point, as the statute of frauds has no application, and the propriety of evidence of that character in a case like the present is' shown by Sherman v. Butts (supra).
My attention is also called to a letter written by the defendant Holloday of September 20, 1863, after the death of his wife, to his son, in which occur the words “when I deeded the farm to mother, the agreement was she was to will it to me, as I would be the proper person to dispose of it hereafter, and that could manage it during my life. A home for me in my old age. However, it seems she changed her mind and made a mother’s will; all of which has my hearty approval. I will fully carry out all she desires to the last item.”
Afterwards, when fully advised of all the facts, the defendant Holloday changed his mind and insisted upon his rights under the agreement and will first made, and caused it to be presented for probate. No rights were acquired by the devisees under the second will by this letter of the defendant, written a few *31 days after his wife’s death, when he was but partially and by telegram informed of the will and its contents, nor was he estopped by such letter from insisting upon his rights (Winegar v. Fowler, 82 N. Y. 315). There should be judgment in favor of plaintiffs, establishing the plaintiff’s rights, and perpetually enjoining the defendants from setting up the second will and claiming under it.*

 Since reported, as Sherman v. Scott, in 27 Hun, 149.
The opinion of Bumsey, J., above referred to, is given below.
Henry Babcock, in October, 1874, owned some real estate worth $4,000. Lavinia Babcock was his wife; they were somewhat advanced in years, and had no children. For the purpose of disposing of his property and to provide for the support of himself and wife, it was agreed by parol between them that he should convey the real estate to her, and she, on her part, agreed to give to him a life-lease of the land, and to make, and at all times keep in existence, a will by which she should devise the real estate to her husband in case he should survive her, and if he should not, that she should, by such will, give to the plaintiff, Arimetta Sherman, a legacy of two thousand dollars, another legafcy of three hundred dollars to John Scott, and the residue of said property to the plaintiff, Mary Perkins. In performance of such agreement the husband conveyed the land to John Scott, and he conveyed it to the wife, who executed to the husband a lease for his life of the same land. She never made the will, although she recognized her obligation to do so down to the time of her death, which occurred on February 6, 1875. On July 14, 1875, Henry Babcock made his will, by which he disposed of his property substantially as it was to go by the will his wife was to make. On August 9, 1875, he assigned to the plaintiff (Sherman) all his rights under the parol contract with his wife for her own use, except that she was from the avails of it to carry out all the provisions of his will. Henry Babcock died on September 13, 1875, and his will was admitted to probate on January 4, 1876, and letters testamentary were issued to William P. Chase, the executor named in it. This action is commenced for the purpose of enforcing the rights intended to be secured to' Henry' Babcock by the parol agreement with his wife. ,9
Rowley and Yale, for plaintiffs.
Oliver and Varnum, for defendants.
Bumsey, J.—The objection that Yale was not a competent witness was not well taken. He had a lien on the recovery for his costs as attorney for plaintiffs, and did not change his position at all by having that lien established by actual convention (Walcott v. Holcomb, 31 N. Y. 125, 130). This lien did not bring him within the inhibition of section 829 of the Code, and the facts he was called to testify to *21 were the statements of contracting parties as to the terms of their contracts, and these have never been held confidential communications.
The counsel for the defendants insist that the provisions of the statute of frauds prevent the enforcement of the performance of this contract. The power of the Court of Chancery to decree the specific performance of parol . contracts in regard to lands, antedates the statute of frauds, but’ even then the courts refused to decree such performance unless the contract was admitted, or it had been partially performed (1 Sugden Vendors, 6th Am. ed. 144).
It has become thoroughly ingrafted on the jurisprudence of this State as well as of England, and its exercise is so essential for the prevention of frauds, that the legislature, in one section of the statute of frauds, has, in terms, provided that nothing in that title shall be construed to abridge the power of a court of equity to compel the specific performance of agreements in cases where there has been a part performance (2 Rev. Stat. 135, § 10; same stat., 3 Id. [6th ed.] 141, §10).
If the contract between Babcock and his wife had remained entirely unexecuted, having been made only by parol, it would have been within the statute of frauds, and no court would enforce its performance; but the wife having received from the husband the title of the land' upon the faith of an honest execution of the whole contract, it would be a gross fraud upon him to refuse to compel her to execute the will, which, in fact, was the substantial consideration for the conveyance of the land to her, or in case of her death before doing so, to furnish such other, relief as the case requires. The whole doctrine of compelling the specific performance of parol contracts is based upon its necessity to prevent frauds of this class, and it has been too long established and enforced to be now questioned.
The only questions in this case therefore, are, 1. Was this contract, thus made between husband and wife, one which the courts will regard as binding upon, the parties, and lend their power to enforce ? And, 2. Is it of that class of contracts, in view of all the facts of the case, of which specific performance will be enforced ?
1. At common law, the husband and wife were deemed but one person, and therefore, incapable of contracting with each other; but in equity the rule was otherwise, and that court gave its aid to enforce such Contracts between husband and wife when good faith and honesty required it (2 Story Eq. §§ 1372, 1373, and cases there cited). *22 Under this rule of equity, the contract between Babcock and his wife having been partially performed, full performance should be enforced, if it can be done, and if not, the title to the property which the husband parted with on the faith of the contract, should be returned. The contract was intended for the mutual benefit of both parties, with the intention that the title should remain with the survivor, and it would be a gross fraud upon the husband if this property thus devoted to the support of both, should, by the neglect of the wife to make her will, pass to the heirs and leave the husband without means of support. The wife certainly did not intend any such thing should occur, and but for unexpected death the will would have been made as contemplated by the contract.
It is not necessary any longer to resort to the equitable rule for the purpose of ascertaining whether the contract in relation to real estate between husband and wife is one which should be enforced. The effect to be given td conveyances from husband to the wife, and wife to the husband has been often before the court and a fruitful theme for discussion since the special legislation in this State in regard to the rights and liabilities of married womejn.
It is not necessary to examine the several cases, for the court of appeals, in the case of Meeker v. Wright, 76 N. Y. 262, 264, seems to have settled the whole question. It appears from the facts of that case, as stated in 11 Hun, 533, that the wife’s mother conveyed to the husband and wife certain premises. The husband sold out his interest in the land to his wife, and took from her a mortgage back to himself for a portion of the purchase money, and subsequently died. The administrators of the husband with the will annexed, commenced an action to foreclose the mortgage and the complaint was dismissed at the special term. The general term in third department affirmed the judgment holding that the deed from the husband to the wife was void, both because it was made directly to the wife and also because the husband and wife held the land as one person, and the deed of one was not good unless the other united in it. The court of appeals reversed the general term, and held that under the provisions of the law of 1860 the husband and wife took the premises conveyed to them by the wife’s mother as tenants in common and that the marital relation existing between them had no effect upon such holding.* The court of appeals, therefore, *23 held that the whole transaction between the husband and wife was legal ; that the mortgage executed by her to her husband was entirely valid and could be enforced. It would seem to follow irresistibly from this discission that all contracts between husband and wife in relation to the individual property of the wife, are to be sustained, unless they are illegal from some cause other then the marital relation.
2. The remaining question is whether this contract is one of that class of which specific performance will bo enforced, and a mere statement of the facts indicates that every consideration of equity requires it should be so held. The English courts, from the case of Goylmer v. Paddiston, in 2 Ventres, 353, decided in 1681, in a long scries of cases down to the present time, have sustained and decided the performance of many similar contracts, some of which are almost entirely like the one under consideration (Randall v. Willis, 5 Vesey Jr. 261 ; Jones v. Martin, 3 Anstr. 882, cited at length in note 1 to 5 Vesey Jr. 262 ; Fortescure v. Hennah 19 Id. 67; Needman v. Kirkman, 3 Barn. & Ald. 531; Needham v. Smith, 4 Russell, 318 ; Podmore v. Gunning, 7 Simons, 644.) The same role has been adopted by the courts of our own and other states, and the authorities above cited are referred to, to sustain it. In Parsell v. Stryker, 41 N. Y. 480,, it was held that an agreement for good consideration and without fraud or undue influence, to devise land, is valid, and will be enforced by compelling a conveyance from the heirs of the testator, or from purchasers from him in his lifetime, with notice. See also the authorities cited in that case. It follows from these considerations that the premises described in the plaintiff’s complaint should be appropriated for the purposes declared in the last will of Henry Babcock, who, if living, would have been entitled to take the title to them under the contract with the wife.
The assignment to plaintiff, Arimetta Sherman, substantially constitutes her a trustee of the property, if recovered for the purpose declared in the will of the assignor, and the evidence upon the trial discloses the fact that she is not now in such pecuniary circunstances as to be a proper person to be invested with the title and disposition of the property in question. The testator, Babcock, selected William P. Chase as the executor of his will, with power to sell his real estate for the purpose of carrying out the provisions of the will, and he is therefore a proper person to be charged with the disposition of the property and its appropriation for the purposes directed by Babcock, its legitimate owner. The evidence discloses the fact that the heirs-at-law of Mrs. *24 Babcock are scattered, and it will be difficult to procure from them quitclaim deeds for the promises, nor do I deem it necessary to do so. The deed from Babcock to Scott and from the latter to the wife, wore executed as a part performance of a contract, to complete performance of which would in a contingency thereby provided for reinvest Babcock with the title, and if such contract had been wholly executed he would, on the death of the wife, have been the owner of the land. The purposes for which the deeds were executed have entirely failed, and it is but equitable that the effective power of tho deeds to transfer the title should fail with the failure of the purposes. The decree, therefore, will he, that both said deeds (and the life lease) be declared void and of no effect, and that' they be cancelled on the records thereof, that the lands in question be sold by order of the court, by William P. Chase (who for that purpose will be appointed referee), according to tho course and practice of the court; that said referee from the avails of said sale, pay, first, the costs and expenses of such sale ; second, the costs of the plain tiff’s attorneys and reasonable counsel fees, to be fixed by the court if the legatees named in the will do not agree upon the same ; third, that the residue be applied as directed in and by the last will of Henry Babcock, deceased. Tho defendants occupy a position in which they have been placed by the acts of Babcock and his wife and by operation of law, and are personally chargeable with no fault in this matter, and should not be charged personally with costs.

 Compare Bertles v. Nunan, 12 Abb. N. C. 282.

 Compare Bertles v. Nunan, 12 Alb. N. C. 282.

 Sod also on this subject, Loffus v. Maw, L. T. R., 4 Ch. 73; Shearer v. Weaver, 56 Iowa, 578; Wallace v. Rappleye, 103 Ill. 229, 254; Ewnig v. Richards, 7 Weekly Cinc. L. Bul. 183 (unsound); Ross v. Ross, 123 Mass. 212; Robinson v. Mandell, 3 Clif. 182; 1 Story Eq. Juris. § 786; Logan v. Wienholt, 7 Bligh, 53.