Harold Hyman, J.
James Di Lorenzo and Anna Di Lorenzo, husband and wife respectively, simultaneously executed mutual reciprocal wills on October 3, 1960.
Each of these mutual reciprocal wills devised and bequeathed to the survivor of them ‘ ‘ all of my property # * * of every kind, nature and description, whether real or personal ”. The *195 wills further provided that in the event the husband predeceased the wife, or vice versa, that “ I hereby give, devise and bequeath all of my property aforesaid in equal share and portion to my beloved children, Daniel * * * Marie * # * and Catherine. ’ ’
On that very same day and simultaneously with their reciprocal mutual wills, they also entered into a separate written agreement which provided that:
“ In consideration of one dollar ($1.00) and the signing of mutual reciprocal Wills on this 3rd day of October, 1960, and for other good and valuable considerations.
“ it is agreed by the parties hereto that neither one shall in his or her lifetime change, alter, amend, destroy or mutilate the Wills executed on this day or make any Codicils changing said Wills without the consent of the other party in writing.
‘ ‘ The contents of the Wills hereinbefore referred to are hereby made a part of this agreement and a copy of them are hereby annexed and initialed by the parties to this agreement. ’ ’
Anna Di Lorenzo was the first of the two to die. She died on March 14,1969, survived by her husband James, who received the full share of her estate. Her estate in actuality was merely that which did not even pass through her will, namely, an undivided share of real property which they both owned as 11 tenants by the entirety ”, together with the balance in a joint survivor-ship savings bank account.
Following Anna’s death, James, her husband survivor, continued to reside and occupy the first floor apartment of the two-family residence, which had been owned by them as “ tenants by the entirety ” in the same manner as he and his wife together had occupied same for many, many years prior to her death. The defendant, one of the daughters of Anna and James and one of the named beneficiaries in both, of the wills, continued to occupy the upper floor of said premises with her family as she also had been doing for many, many years prior to her mother’s death.
As time went on after Anna’s death, James — her surviving husband — began to show the inescapable ravages of age.
In May, 1971 the defendant-daughter-beneficiary who had the wills and agreement and knew their terms, went to the office of an attorney, not the one who had prepared the reciprocal wills and contract. Said attorney testified that he prepared the New York State Department of Taxation and Finance Estate Tax Form TT102 to obtain a release of tax lien concerning the real property on the estate of Anna; he drew the neces *196 sary form for James, the surviving husband, to sign; he filed the papers which were executed by James, and he ultimately caused the estate tax to be paid. He further testified he was representing James', although he gave the estate tax receipt, the release, and the deed from the prior owner conveying the real property to Anna and James (as tenants by the entirety) to the defendant; that thereafter, in February or March 1972, James again came to his office together with the defendant; she showed him copies of the reciprocal wills to which a copy of the written agreement which Anna and James had simultaneously executed with the reciprocal mutual wills was attached as provided for by said agreement; that James, then 86 years old, was very frail; that he spoke to James, who said his daughter wanted a deed, but that he, the attorney, refused to prepare any such conveyance because in his opinion it would have been in contravention of the written agreement; that he told James not to be fearful, since he observed that James was shaking; the defendant also requested the deed to be prepared by him, but which he, as previously stated, refused to do.
The first attorney having refused the request to prepare a conveyance from James to this defendant, the defendant thereafter, one month later, went to another attorney with the identical request. Said attorney interpreted the contract contrary to that of the first attorney; he prepared the conveyance from James to defendant, but inserted a reservation therein providing for James to reside in and occupy the afore-mentioned real property free of rent or other charge for the remainder of his life.
It is as to that conveyance from James to the defendant and as to the transfer of the joint survivorship savings account funds that this action is addressed by the other children, the two remaining beneficiaries named in the said reciprocal mutual wills, who seek equitable relief establishing their shares in the fund and in the real property by having the court declare the defendant the “ constructive trustee ” thereof for their benefit.
The law is well settled, that, as a will an instrument is revocable at pleasure, but as a contract, if supported by an adequate consideration, it is enforceable in equity (Rastetter v. Hoenninger, 214 N. Y. 66, 71). Bach was at liberty during his lifetime to use his own as he saw fit, short of making a different testamentary disposition or a gift to defeat the purpose of the agreement, which was that upon his death each was to leave the property of which he was then possessed in the manner agreed upon. Very likely either during their joint lives might, *197 upon notice to the other, and in this case with the other’s written consent, have revoked; but after the agreement had' been executed by the wife’s dying without making a different testamentary disposition of her property and, after the acceptance by the husband of the benefits of the agreement, it became obligatory upon the latter and enforceable in equity upon his death. (Rastetter v. Hoenninger, supra, p. 73.) Of course, the agreement had to be carried out honestly and in good faith. The husband could not, after accepting the benefits of an agreement, make a gift or conveyance or a testamentary disposition to defeat the purpose of or do violence to the agreement. What the parties disabled themselves from doing was the making of a disposition contrary to their “ reciprocal mutual wills and contract ” after accepting the benefits of the agreement. (Rastetter v. Hoenninger, supra.)
It is interesting to note that in Tutunjian, v. Vetzigian (299 N. Y. 315), the husband and wife, Mihran and Helen, respectively, entered into a written agreement whereby each agreed to leave his property to the other, and, on the same day, executed a joint will providing for such a disposition. In addition, the will also recited that, upon the death of one of them, 11 then we, or the survivor of us do bequeath and devise all our property ” equally among certain named persons (p. 318). Thirteen years later they executed another joint will, identical in plan and substance with the prior will, except for omitting named legatees who had died in the interim. The husband died two years later; whereupon the wife executed a new will contravening the terms of the two prior wills. She died shortly thereafter.
The action was brought by some of the legatees of the prior wills who were cut off by the wife’s last will after the husband had died. The Court of Appeals held (pp. 319-320):
“ One so inclined may bind himself by a mutual or joint will to dispose of his estate in a specified and agreed manner # * * If, in violation of the agreement so made, one of the parties to the joint will executes a new one, the latter is recognized as his last will and testament, but the courts will require its executor and beneficiaries ‘ to perform the contract ’ of their decedent. (See Dufour v. Pereira, supra, 2 Hargrave, p. 309.) Indeed, to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other ‘ would be a mockery of justice ’. (Mutual Life Ins. Co. v. Holloday, 13 Abb. N. C. 16, 24.) The principle, supported by reason and equity, has been followed in this State (see Edson v. Parsons, 155 N. Y. 555; Rastetter v. *198 Hoenninger, 214 N. Y. 66; Hermann v. Ludwig, 186 App. Div. 287, affd. 229 N. Y. 544). * * *
‘ ‘ In our view, the courts below were justified in finding that the parties had agreed not to revoke the 1942 will and to make the bequests therein provided. While the mere execution of a joint reciprocal will may not suffice to establish such a contract * * * the language used by the testators in this case supplies evidence of such an underlying obligation. * * *
“ If there could be any doubt, it is removed by the 1929 contract and will. The 1929 contract expressly provided not only that Mihran and Helen ‘ agreed ’ to leave their property to each other but went on to recite that they had this day ‘ simultaneously with the execution of this contract ’ executed ‘ mutual wills ’. The joint will thereupon executed contained the additional provision for their respective relatives. Since that instrument must be read in the light of the contract pursuant to which it was drawn, the inference is strong that the testators at the time intended and agreed to provide not only for themselves but for their collateral heirs. * * *
‘ ‘ The contract of the parties being established, it is enforcible in equity. As noted above, the court may not set up the joint instrument of 1942 as Helen’s last will and testament but it may compel performance by her later-named beneficiaries of the obligations which she assumed. Those beneficiaries are to be deemed to hold * * * her .estate as a resulting trust in favor of the * * * relatives * * * those who, though the beneficiaries of the joint will, were cut off by the wife’s later will.”
In Azzara v. Azzara (1 A D 2d 1012, mot. for rearg. and for lv. to app. den. 2 A D 2d 760, mot. for lv. to app. dsmd. 2 N Y 2d 829) the facts were also similar to the instant situation. In that case the husband and wife owned real property as 11 tenants by the entirety ”; they executed a joint will giving their property equally to their children. After the husband had died, survived by the wife, the wife conveyed the property to one of the children. One of the distributees, an originally named beneficiary, commenced an action to set aside the conveyance afore-mentioned and for other -relief as being in violation of the joint will.
The court clearly pointed out that ( 1 A D 2d 1012, 1013): “ While neither a husband nor a wife can dispose of property owned by them as tenants by the entirety so as to affect the right of survivorship, they may do so by acting in concert as by a joint will, or by a contract. (Hiles v. Fisher, 144 N. Y. *199 306; Matter of Klatzl, 216 N. Y. 83; Matter of City of New York [Jamaica Bay], 252 App. Div. 103.) A joint will which imports a contract is enforceable in equity. (Rastetter v. Hoenninger, 214 N. Y. 66; Hermann v. Ludwig, 186 App. Div. 287, affrd. 229 N. Y. 544.) ”
The Azzara case afore-stated made a very cogent observation of the law which is also decidedly apropos to the instant matter, that is, that (p. 1013): “ The will itself, in the case at bar, contains no agreement or understanding that it will not be revoked. Such an understanding or agreement may be established from evidence of the conduct of the parties prior to, at the time of, or subsequent to, the execution of the will. (Rastetter v. Hoenninger, supra; Hermann v. Ludwig, supra.) ”
In Swerdfeger v. Swerdfeger (4 A D 2d 535) the court had before it a joint will of a husband and wife which left all their property, whether owned jointly or severally, to the survivor of them and then over to their children in equal shares. The joint will began by stating (p. 536): “ in consideration of the agreement of each of us to dispose of our property as hereinafter set forth ”,
The Appellate Court citing Rastetter (214 N. Y. 66, supra) and Hermann v. Ludwig (186 App. Div. 287) and Azzara (supra) in support of its determination to reverse the order granting defendant summary judgment and the judgment entered thereon, stated (4 AD 2d 535, 537): “ All of the authorities are in accord that clear and convincing proof is essential to establish a contract rendering even a joint will or mutual wills irrevocable. Such proof may be supplied by the language of the will itself or by extrinsic evidence. As we have indicated, the language of the will in question here is evidence of such a contract ” (emphasis supplied).
It is contended by defendant that the case of Schwartz v. Horn (31 N Ys2d 275) supports her position because neither the reciprocal mutual wills nor the contract executed by them simultaneously therewith, makes a specific bequest or devise of this specific real and or personal property involved, but rather, at the very best, that it merely constitutes an agreement between the testators that the survivor will leave his entire estate to particular named beneficiaries. It is defendant’s contention that if the wills made a devise of that specific real or personal property that the agreement would preclude an inconsistent inter vivos gift, transfer or conveyance, but that since it does not that it does not preclude the inconsistent inter vivos conveyance to defendant. Defendant, a daughter and one of the *200 beneficiaries named in the reciprocal wills, therefore contends that the conveyance of the marital abode, the only piece of real property that her parents, the testators, possessed and which they had jointly purchased and owned as “ tenants by the entirety ’ ’ for the many years of their married life, and the transfer of the joint bank accounts owned by the said testators during their lifetime, after the wife’s death was, therefore, not precluded to the survivor-husband-testator.
This court does not so interpret the Schwarts case, but to the contrary interprets it to mean that the survivor was bound by his agreement not to make any such gift or conveyance which would be inconsistent with the agreed upon and contracted for testamentary dispositions; that to permit the one who survives to gain the benefit of the reciprocal mutual wills and agreement and then to flout its provisions in violation of the promise made to the other would be a mockery of justice and fairness (Mutual Life Ins. Co. v. Holloday, 13 Abb. N. C. 16, 24). The element of good sense and fairness is further indicated so as to enable the survivor not to be deemed in violation of his promise when it is held that the survivor is not to be deemed prohibited from using the property not specifically devised or bequeathed or its or their proceeds, to meet his daily needs. (Schwartz v. Horn, 31 N Y 2d 275, 281, supra; Dickinson v. Seaman, 193 N. Y. 18, 24.)
In the Dickinson case (supra, p. 24), it was most particularly and pointedly stated that: “ It would be unreasonable to hold that either party, by such an agreement * * # intended that the head of the family, though he might live to be an old man and be worth millions, could never consider an application for charity without a blush, because by agreement with his own wife, he could not give any substantial sum even to the most noble object '* * * it is further asked where the line is to be drawn between the power to give away all and the power to give away nothing. That line is to be drawn where the courts always draw it when they can, along the boundary of good faith.”
In this court’s1 view there is no conflict between the rationale in the Schwartz, Rastetter, Hermann, Tutunjian, Azzara and Rubenstein v. Mueller (19 N Y 2d 228, 233) cases. Throughout those cases runs the theme of either a restrictive agreement prohibiting revocation construable from the terminology of joint or reciprocal mutual wills, or either of such type of will or wills together with a separate restrictive written contract prohibiting revocation, as well as benefit gained by the survivor following *201 the death of one of the original contractual parties or testators, and also the survivor’s “ good faith” in dealing with the merged estate.
Nor is this court of the belief that Schwarts (31 N Y 2d 275, supra) was ever intended to mean that when the contracting parties spoke, in their reciprocal wills, of ‘1 all of my property * * * of every kind or nature and description, whether real or personal ”, and in their then simultaneously executed written agreement, that “it is agreed by the parties hereto that neither one shall in his or her lifetime change, alter, amend, destroy or mutilate the Wills executed on this day or make any Codicils changing said Wills without the consent of the other party in writing ’ ’ that once one party had died that the survivor had the fight to violate the agreement and dispose of any part of the estate, except for personal consumption because of necessity or for charitable gifts, the latter within the realm of “ good faith ”. To permit the survivor to do otherwise would not only do violence to the agreement but would also be a mockery of fairness and justice.
There was evidence adduced on the trial of the instant action that at the time the reciprocal wills and the contract were simultaneously executed by Anna and James they were all read, explained and made clear to both of them by their then attorney in the presence of one of the subscribing witnesses to their wills and to their contract and also in the presence of their son Daniel; that these documents were meant to carry out their mutual expressed intent and purpose that the final and ultimate disposition of all of their earthly goods, as requested and provided for by them, was to be to their three children in equal shares, and that the reciprocal mutual wills and contract were executed in contemplation to such an end result; and, that such was readily and affirmatively acknowledged by both husband and wife; and that to that end copies of said reciprocal mutual wills were deliberately provided for by said written agreement to be attached to the written contract at that time, as they were.
Such evidence was clearly admissible to show the conduct of the parties prior to and at the time of the execution of the wills and contract (Azzara v. Azzara, 1 A D 2d 1012, supra), as well as to determine the parties’ meaning of the contract verbiage “ that neither one shall in his or her lifetime change, alter, amend, destroy or mutilate the Wills executed on this day ”, by their res gestae statements and their physical acquiescence at the very time of execution, as such applied to the question of the wills being irrevocable. (Insurance Co. v. Mosley, 75 *202 IT. S. 397.) These declarations, made res gpstcfye at the time of the act which they were supposed to characterize, were truly calculated to unfold the nature and quality of the factual physical act which they intended to explain and they harmonized with those acts and facts to form one informed transaction. (Smith v. National Benefit Soc. of City of N. Y., 123 N. Y. 85.) If the language of the contract, that is the verbiage “ change, alter, amend, destroy or mutilate ” be suggested as being allegedly definitive and lacking in restriction as to the wills being “ irrevocable ”, then the evidence was likewise admissible and unrestricted by the parol evidence rule in order for the court to factually ascertain the true intention of the parties at that time. (Middleworth v. Ordway, 191 N. Y. 404; United States Print. & Lithograph Co. v. Powers, 233 N. Y. 143.) Quoting from Petrie v. Trustees of Hamilton Coll. (158 N. Y. 458, 464): “ "While the court is to construe the contract, if its construction depends upon the sense in which the words were used in view of the subject to which they relate, it is necessary by proof of collateral facts and surrounding circumstances to place the court in the position of the parties when they made the contract, so as to enable it to understand the meaning of the words used in reducing it to writing.”
A fair interpretation of all of the contract verbiage, together with a reading of the wills, leads this court to its determination that the parties intended and so deemed their reciprocal mutual wills to be irrevocable, and that the reciprocal mutual wills together with the simultaneously executed written agreement to which said reciprocal wills were then and there attached and which provided for said wills to so be attached thereto, to be the strongest kind of evidence that the parties had entered into and intended the agreement that the property remaining after the death of the survivor was to go to their children in equal shares and that such agreement was irrevocable by one after the death of the other. This court believes that the language used by the testators in this case in their mutual wills and in their simultaneously entered into contract supplies evidence of such an underlying obligation. Of course the parties could have revoked their reciprocal wills during their lifetime with the other’s consent “ in writing ”, and they so provided.
To lay at rest defendant’s contention of “ ownership ” and thereby James’, the surviving husband’s, legal ability to dispose of the real property and the personal property without restriction of any kind under the instant circumstances the *203 verbiage used by the Court of Appeals in Rubenstein v. Mueller (19 N Y 2d 228, 233-234) is pertinent; it states:
“ The bulk of the property involved did not come to Mueller under the joint will. His interest in the real property, for example, commenced as a tenant by the entirety, ripening into sole ownership through his surviving his first wife [Bertha]. Similarly, his formal title to most of the personalty, consisting of savings accounts, derived from his surviving Bertha, with whom he had these joint accounts. In addition, it is not clear * * =:i whether any of this jointly held property represented the independent estate of Bertha Mueller or whether, as is typical, it represented the jointly held fruits of Conrad’s labors outside the home aided1 by Bertha’s efforts within the home for their lifetime together. In any event we do not attempt a segregation of assets of husband and wife after a marriage of this duration. For all practical purposes, equity may content itself with considering the assets as their collective property, as if their estates had merged.
“As to this collective property we feel that, on the death of one party to the joint will, the survivor was bound by the mutual agreement that the named beneficiaries should receive the property remaining when the survivor died. (See Hermann v. Ludwig, 186 App. Div. 287, 297, affd. 229 N. Y. 544.) * * * The survivor’s right to full ownership of the collective property is transformed and modified by this joint agreement, effective upon the other’s death # * # into but an interest during the life of the survivor with power to use the principal. ‘ While neither a husband nor a wife can dispose of property owned by them as tenants by the entirety so as to affect the right of survivorship, they may do so by acting in concert, as by a joint will, or by a contract. (Azzara v. Azzara, 1 A D 2d 1012, 1013; see, also, Swerdfeger v. Swerdfeger, 4 A D 2d 535.) ’ After Bertha’s death, then, the property received by Conrad was his but subject to an interest enforcible specifically as to so much of it as he did not consume during his lifetime.”
In construing the word used in the afore-mentioned case, namely, “ consume ”, this court does not believe that the word was used in the sense other than to eat, drink or for the necessities of life of the survivor, and that the word “ consume ” was not intended to mean “ dispose of ”, “ to alienate '”, “ part with ” or “ to get rid of ” in any way other than for the survivor’s absolute necessities or possibly for charitable purposes, but all or either within the realm of judicially determinable “ good faith
*204 This court concludes that Schwarts (31 N Y 2d 275, supra) also clarified the question as to a surviving testator’s ability to in any way dispose of or con'sume the proceeds óf “ specific property ” devised or bequeathed in apparent violation of the irrevocability of joint or mutual wills, with the answer being in the negative. Oh the other hand, and under similar circumstances where ■“ specific property ” is not so devised or bequeathed, the surviving testator’s ability to dispose of the real or personal property is limited only to the survivor’s personal consumption thereof, or the proceeds thereof, if required by him for his daily living necessities, and, possibly, for insubstantial charitable gifts, but even then dependent upon his acting in “ good faith ” (Rubenstein v. Mueller, 19 N Y 2d 228, supra; Dickenson v. Seaman, 193 N. Y. 18, supra; Schwartz v. Horn, supra).
In the view of this court, therefore, the defendant’s contention that the contract did no more than obligate the surviving husband not to change, alter, amend or destroy his will and that he was free, during his lifetime and following the death of his wife, to do as he desired with the properties accumulated by him and his wife during the many years of their marriage, is untenable. Certainly, 'after one of the testators had died with there not having been any written consent executed by her during her lifetime which permitted her survivor to alienate their “ merged properties ”, that after his acceptance of the benefits of their reciprocal mutual wills, to validate his transfers of the realty and personalty to only one child would do violence to their mutual written agreement, and to their spirit and intent to leave their “ all ” to their three children beneficiaries and not to favor one over the others.
This court, therefore, finds the reciprocal mutual wills to have been irrevocable (except upon written consent), and that the real property which the deceased husband and wife owned as “ tenants by the entirety ” and the life savings accumulated by them during their many years of marriage and deposited by them in a joint survivor savings account in both their names, to constitute their merged estate, not subject to any segregation (Rubenstein v. Mueller, 19 N Y 2d 228, 233, supra); and, that such real and personal property constitute the subject of a “ constructive trust ” .with the defendant hereby adjudged the constructive trustee thereof for the benefit of the remaining beneficiaries Daniel Di Lorenzo and Marie Campilonga, to the extent of a one-third share thereof as to each of them, so that *205 they and the defendant are each hereby adjudged equal shareholders thereof as “ tenants in common ” of the ¡whole.
Defendant seeks an “ equitable offset ” against such “ constructive trust ” for moneys expended by her to improve the real property, for alleged services rendered by her in connection with her attendance upon her parents in their later years, and for funeral expenses expended by her for the last survivor, her father.
The action for services rendered is dismissed since no proof was adduced as to any agreement therefor; but, rather, on the other hand, the proof indicates that the defendant, as a dutiful daughter, performed such services voluntarily and without any expectation of reward, knowing full well that she, her sister and her brother would ultimately be the recipients of equal shares of all of their parents’ merged worldly goods.
Ás to defendant’s demand to offset certain expenditures with regard to the real property subsequent to her obtaining the conveyance in issue, and for her father’s funeral, “ equity will do equity ”, and the court does hereby grant such an offset against the over-all hereinafter computed value of the merged estate as to such items in such amounts as it deems fair and just.
The fair and reasonable market value of the real property, a two-family house, is found to be $45,000; the joint savings bank account, $6,503.96; the fair rental value of the apartment occupied by the defendant and her family since April, 1972 is determined at $200 per month, for a total rent up to December 31, 1974 of $4,200; thereby adjudging the total value of the merged estate to be $55,703.96.
As against the above total principal, the court allows the following items:
father’s funeral expenses..............$2,409.25
modernizing real property...............1,357.50
replacing sidewalk to house...............225.00
repair of ceiling in house..................100.00
for an offset of $4,091.75, plus the amount defendant was obliged to pay for New York City real estate taxes for the taxable years 1972-1973, and for the first two quarters of 1973-1974, plus 1973 and 1974 water and sewer charges, and fire and comprehensive liability insurance for the years 1973 and 1974.
The court, therefore, concludes that the defendant is hereby directed: (a) to cause to be transferred back to herself, her brother Daniel and her sister Marie, the savings bank account *206 as joint tenants, subject only to withdrawal upon their three joint signatures; and (b) to promptly reconvey to herself, her said brother and sister the real property as “ tenants in common”; and (c) to cause said reconveyance to be promptly recorded; and (d) to pay all the fees and disbursements in connection with said conveyance and recording. Defendant’s total fiduciary obligation as “ constructive trustee ” for her sister and her brother in connection with the real and personal property is hereby monetarily computed as afore-stated to be one third as to each of them; that each plaintiff “ constructive trust beneficiary ’ ’ is also entitled to interest on said share, as monetarily computed, at the rate of 6% per annum from January 1, 1975 to the date of receipt of payment by each of them.
The plaintiffs Daniel Di Lorenzo and Marie Campilonga are jointly entitled to one full bill of costs to be taxed by the clerk of this court. Execution on said judgment shall be stayed for a period of 30 days after service of the judgment to be entered hereon together with notice of entry thereof, upon the attorney for the defendant.